CatoN, Justice, delivered the opinion of the court: This bill was filed in the Peoria circuit court, by the heirs at law of Lewis Bigelow, deceased, to rectify a mistake in, and compel a specific ' performance of an agreement entered into between Ballance, Bigelow, and one Voris, for a division of the premises in the agreement described. It is also provided in the agreement, that whatever title either should thereafter acquire from the United States, to said land, should enure to the benefit of the others, so far as related to the portion assigned to each. The bill states that Bal-lance and one McClure applied to enter the premises in question jointly under the pre-emption law of 1832 ; that McClure disposed of his interest to Bigelow and Voris, with whom the agreement was made; that Bigelow and Voris had offered to perform, and that Ballance refused to perform. The answer of Ballance, (who is only defendant in interest,) admits the making of the agreement, and the mis- [* 298] take, but sets up as a defence, that the agreement was obtained from him by fraudulent misrepresentations, and under a misapprehension of his rights. The case shows that Ballance employed Bigelow to go to the land office to secure this pre-emption and made him some advance for that purpose. It is not certain, nor is it very material, whether he employed him to secure a preemption for himself, to one half of the tract, or to obtain a preemption for himself and McClure jointly to the whole. After his return he represented to Ballance that he had secured or obtained a pre-emption in their joint names, and in a short time he acquired an interest in the claim of McClure, and presented an agreement to Ballance to execute; Ballance manifested much reluctance to signing it, and put him off some time, expressing doubts of the truth of his assertion that he had secured the pre-emption. He, however, finally signed it, stating that he should not be bound by it, if Bigelow had deceived him. This application for a pre-emption was never allowed, but subsequently Ballance obtained a pre-emption to the whole tract, under the act of 1834. It is manifest if Bigelow did not intentionally misrepresent to Ballance what he knew to be the facts in relation to that application, still that Ballance was led to believe, and did believe, that a different state of facts existed from what turned out to be the case. No doubt is left but that he supposed, at that time, that their application had been adjudicated upon and allowed by the land officers, and that under it they were to receive a title which was the subsequent title referred to in the agreement. It appears the plats were not then in the land office, and hence the land could not then be entered; and for this reason Bigelow was not expected to make the entry at the time he made the application ; and all that was expected of him was to get the claim allowed. This circumstance afforded great facilities for deceiving Ballance as to what had been done, no voucher having been expected at the time. It is not remarkable that Ballance was slow to believe that the claim was allowed, when we see how far short of the requirements of the law was the case which was made by the affidavits presented. The pre-emption act of April 5th, 1882, required under all circumstances, that the pre-emptor should, outlie day of its passage, be an actual settler and housekeeper on the land. U. S. Land Laws, Part 3d, 562, 570-1. Yet the strongest ease that can be made, from the papers presented, was that they were settlers and housekeepers on the 24th and 28th of July, 1832. Still as the affidavits approximated very nearly to the first forms issued under that act, the prospect of practicing a fraud upon the law was not so remote as not to induce the effort. As before observed, when Bigelow returned, he stated that he had secured or obtained the pre-emption; and under and in view of that statement, Ballance entered into this agreement. [’*' 299] He supposed that the claim had been actually passed upon and allowed by the land officers. But in that he was mistaken or deceived. All that Bigelow did was to file the papers in the office. In no sense was it true that the pre-emption had been secured by filing sufficient papers, or obtained bj^ getting the claim allowed. Under this misapprehension of his rights, then ; supposing that he, as well as Bigelow and Voris, as assignees of McClure, had a tangible interest when they had none ; supposing that all the title which he ever could have to the premises, must be derived under that joint claim, he entered into this agreement for a division, with convenants to further assure the title which he should afterwards acquire ; and now is it the duty of a court of equity to compel him specifically to perform a contract entered into under such circumstances'? We shall see. An application for the specific performance of a contract is addressed to the sound legal discretion of the court; and it is not a matter of course that it will be decreed, because a legal contract is shown to exist. Indeed, the origin and ground of this jurisdiction is that a compensation in damages is inadequate to the full measure of the party’s equitable rights. It is not necessary to authorize this court to refuse & specific performance, that the agreement should be so tainted with fraud, as to authorize a decree that it should be given up and cancelled on that account. Marlock v. Buller 10 Vesey 292; Willan v. Willan, 16 Vesey 83; Jones v. Slatham, 3 Atk. 388. A specific performance will not be decreed unless the agreement has been entered into with perfect fairness, and without misapprehension, misrepresentation, or oppression. Longwood v. Barnerderton, 3 Atk. 133; Underwood v. Hitchcock, 2 Vesey 279; Seymour v. Delaney, 3 Cowen 505. Admitting there was no fraud or intentional misrepresentation in this case, then all the parties supposed they had a substantive interest in the premises, and it was in view of, and in reference to that interest, that the agreement to convey titles subsequently to be acquired was made. It turned out that neither had any interest at the time, nor did they ever obtain any from the source whence they expected it. But two or three years after, Ballance goes on and gets a title to the whole, in his own right, and on entirely independent grounds, in which neither Bigelow nor McClure had any legal or equitable interest, nor -by this were they prejudiced in any possible manner. This contract was not made in reference to, or in expectation of this title. It cannot be supposed for a moment, that if Bal-lance had known that nothing would ever come of that application, he would ever have entered into this agreement. Indeed, he delayed its execution for some time, doubting the truth of Bigelow’s statement that the pre-emption was secured. We may as safely say that the subsequent title which he agreed to convey was the one to be derived under that joint claim, [* 300] as if it had been so expressed in the covenant. An agreement is to be construed and enforced, in reference to the consideration in contemplation of the parties at the time of making it, notwithstanding the language may be broad enough to include other matters which they knew not of at the time. Ramsden v. Hellow, 2 Vesey, Sen. 310. The only consideration moving Bal-lance to make this agreement was the prospect of acquiring areal interest which he suppose McClure, or his assignees, had to the part set off to him in the division; and so the only consideration which induced Bigelow and Voris to sign this agreement, was the hope of getting Ballance’s interest to be acquired under that claim, to the part set off to them ; and now, when that consideration has in fact entirely failed, as to both the parties, it would be against all conscience to give Bigelow another and more valuable title, which he did not in truth contract for, although the language used in the agreement may cover it. Had he known the truth, it is beyond conjecture, that Ballance would never have signed this agreement. Under such circumstances, this court must ever refuse its aid to enforce a specific performance, and if it does not annul the contract, it leaves the parties to their legal remedies. With this view of the case, the decree below afforded the complainants all the relief to which they were entitled. It rectified the mistake, and then left the parties to contest their rights at law. What might have been the result, had Ballance filed a cross bill to rescind the agreement, it is unnecessary now' to acquire. It now remains to be seen whether the court erred in decreeing that the complainants should pay the costs. By the 14th section of our act concerning costs, (R. L. 169; Gale’s Stat. 197,) in ail cases in chancery where the cause proceeds to a final decree, the court may award costs, as in its discretion it may deem just. It may be that this discretion might be so erroneously exercised, that for that reason a decree might be reversed or modified. Butin this case that discretion was properly exercised. The only relief to which the complainants were entitled, was the correction of the mistake in the agreement, and it does not appear that it was necessary to come here for that purpose; because it does not appear that the defendant was in default. For aught that appears, the first he knew of the existence of the mistake was the filing of the bill, and to its correction he has made no objection. It is not even alleged in the bill that he had refused, or even been requested to rectify the mistake. Had he refused, on request, to do so, then he would have been in default, and it would have been apparent that this suit was necessary to attain that end. The decree of the court below was proper, and is affirmed with costs. Decree affirmed.